UNITED STATES v. SELECTILE CO., INC., FRANK P. DOW CO., INC. OF L.A. ET AL. (No. 5093)*

---

*C.A.D. 805.

United States Court of Customs and Patent Appeals, July 25, 1962

*William H. Orrick, Jr.*, Assistant Attorney General (*Richard E. FitzGibbon*, Chief, Customs Section, of counsel) for the United States.

*Barnes, Richardson & Colburn, Glad & Tuttle* (*Edward N. Glad* and *Joseph Schwartz*, of counsel) for appellees.

[Oral argument April 5, 1962, by Mr. FitzGibbon and Mr. Glad]

Before WORLEY, Chief Judge, and RICH, MARTIN and SMITH, Associate Judges, and Judge WILLIAM H. KIRKPATRICK.[1]

MARTIN, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, First Division, C.D. 2281, ▓▓▓ sustaining the importers' protest and holding certain merchandise properly classifiable as slabs of marble under paragraph 232(b) of the Tariff Act of 1930 as modified by the Annecy Protocol to the General Agreement on Tariffs and Trade, T.D. 52373 and T.D. 52476. The Collector of Customs had classified the merchandise as marble wholly or partly manufactured under paragraph 232(d) of the Tariff Act of 1930, as modified by T.D. 54108.

The pertinent portions of the Tariff Act of 1930, as modified, read:
Paragraph 232(b)

> Slabs and paving tiles of marble, breccia, or onyx: Containing not less than four superficial inches:
>
>     *      *      *      *      *      *      *
>
> If polished in whole or in part (whether or not rubbed):
>      If not more than one inch in thickness_____ 7¢ per
>                                              superficial foot.

Paragraph 232(d)

> Marble, breccia, and onyx, wholly or partly manufactured into
> monuments, benches, vases, and other articles, * * * not
> specially provided for_____ 22½%
>                                                  ad valorem.

The importation includes three types of pieces of marble as follows:

1) 4-inch slabs in varying lengths from 30 inches to 60 inches,
2) 16-inch slabs in varying lengths from 30 inches to 60 inches, and
3) slabs 6 feet, 11 inches by from 6 feet, 4 inches to 6 feet, 7 inches.

It was stipulated that the slabs of 4- and 16-inch widths have one polished surface and three polished edges and the slabs having one dimension of 6 feet, 11 inches have one polished surface and all four

---

[1] United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of Judge O'Connell*, pursuant to provisions of Section 294(d), Title 28, United States Code.

edges are polished. It was also stipulated that all of the slabs are one inch or under in thickness. The record further indicates that the polished edges of the 4-inch and 16-inch wide slabs are one long and two short edges.

The importers, the appellees here, took testimony of two witnesses and offered exhibits including photographs of marble installations made from 4-inch and 16-inch wide slabs. Four witnesses were called by appellants, the defendant below.

The Customs Court summed up the evidence as follows:

The fact that the pieces of marble at bar were ordered in specific sizes and states of polishing is explained by evidence offered by the plaintiffs to the effect that experience had shown that pieces of marble in those sizes and states could be most economically used in the business of the ultimate consignee, which was the installation of marble in homes and buildings and the manufacture of marble articles.

Among such installations in which the 4-inch-wide pieces were used were windowsills, thresholds, splashboards, ledges, shelves, aprons for hearths, and returns for fireplace openings. Some were also used, in conjunction with some 16-in-wide pieces, to make tabletops.

Among installations in which the 16-inch-wide pieces were used were wainscotings, fireplace facings, pullman counters, dressing counters, vanity tops, cabinet tops, and hearths.

In such work with the 4-inch and 16-inch-width pieces, they must often be cut to the correct dimensions for the particular installation, either in length or width, or in both dimensions, and, when the length dimension is altered by cutting, the new edge must be polished.

The larger pieces involved, those with all four edges polished, were used for a variety of purposes, including toilet partitions. In such use, the pieces were cut to size, rubbed to the correct thickness to fit the hardware used in conjunction therewith, and polished on the second face. None of the larger pieces was used in the condition as imported.

Boiled down, the evidence offered on behalf of the defendant consisted of the firm belief, expressed by men experienced in the marble business, that the cutting to specific dimensions and the polishing of one surface and three or four edges of a rectangular slab of marble thereby dedicate it to some specific use or class of uses.

What that use or class of uses is, according to these witnesses, depends upon the intent of the person who ordered the marble cut and polished, and, in fine, it appears that the 4-inch-width pieces of marble at bar could be used "any place where a 4-inch piece of material would fit," and the same is apparently true of the 16-inch-width pieces, as well as of the larger pieces. It should be said, however, that these witnesses stated that the sizes and states of polishing in which the present merchandise was imported are "standard" for the purposes for which they were used by the ultimate consignee, i.e., as windowsills, ledges, shelves, wainscotings, counter tops, etc.

It was the view of the Customs Court that the evidence did not show that any of the imported pieces had anything done to them beyond what might be done in the provision of slabs. The pieces, the court found, were not shown to have taken on the identity of any specific articles or class of articles, even in a state of partial manu-

facture. It ruled that the pieces are only material in slab form, from which a number of different articles might be made.

Appellant urges that the terms windowsills, thresholds, splashboards, ledges, shelves, aprons for hearths, table tops, pullman counters, dressing counters, vanity tops, cabinet tops, hearths and other such terms "are clearly more precise or exact words used to describe the articles of importation than the general term, slabs." It points to the fact that one edge of the 4-inch and 16-inch wide pieces is not polished as indicating that the pieces were made to be used in places where that edge is hidden from view. Appellant also contends that the operations employed to provide such pieces indicate that the purpose was to fabricate an article of marble ready for installation rather than merely to polish a marble slab.

Appellees urge that the importations are stock size slabs imported for general use and are covered by paragraph 232(b). They refer to testimony of one of its witnesses that the fourth edge of the 4-inch and 16-inch wide slabs was deliberately left unpolished to avoid having the Customs officials treat the slabs as finished articles.

There is no question about the significant facts in this case. The imported marble is cut and polished according to the specifications of the importers for definite purposes. Being in the marble installation business, the importers found that the pieces of marble so cut and so polished were the most economical for their trade, a good part of which was installing marble splashes, pullman counters, tub surroundings, wainscoting, windowsills, thresholds, legs and other parts for mantels, toilet partitions, hearth aprons, and making table tops, by cutting and fitting the 4-inch and 16-inch pieces together. About 50 to 55 percent of the 4-inch and 16-inch pieces are installed as splashes and pullman tops after some work has been done in the shop before installation. The work consists of cutting to the proper length, polishing on the edges, cutting notches and slots. When marble toilet partitions are to be installed, polishing the rough side of the 6 foot, 11 inch pieces and rubbing to the proper thickness is required in addition to cutting to the desired size.

Appellees' contention that the 4-inch and 16-inch pieces were polished only on three sides before importation so that the customs officials would not classify them as articles, is not supported. The record is clear that they were so polished, and the 6 foot, 11 inch pieces polished on all four edges because experience had proven that in appellees' business, the imported pieces so conditioned were most adaptable to appellees' purposes.

However, regardless of this unsupported contention, we believe that the imported merchandise is nothing more than material which appellees stock in sizes most adaptable to their marble installation business. Under these circumstances, we are of the opinion that the merchandise

cannot be considered "articles" as contemplated by paragraph 232(d) of the Tariff Act of 1930. Rather, we believe that the importation should be classified as slabs of marble partly polished, within the purview of paragraph 232(b) of the Tariff Act of 1930.

Appellant argues that the merchandise at bar comes within the purview of paragraph 232(d), inter alia, because of our decision in *United States* v. *Quality Marble & Granite Co., et al.,* 48 CCPA 50, C.A.D. 763. There we held that certain square, rectangular and round pieces of marble should be classified under 232(d). That case is clearly distinguishable from the one before us now. There, 90 per cent of the importations were sold to furniture manufacturers who used them as table tops *in their imported condition.* Here we have pieces of marble used as material by the importers in making various kinds of marble installations in buildings and, furthermore, the importations are not used by the importers in their imported condition.

For the above reasons we *affirm* the judgment of the Customs Court.